C. A. KIPP v. GEORGE H. ELWELL.[1]

July 17, 1896.

Nos. 9908—(211).

**Constitution—Collection of Outlawed Taxes—Laws 1893, c. 150.**

In so far as Laws 1893, c. 150, undertook to confer jurisdiction upon the district court to proceed as against lands upon which the state had lost its lien for taxes, and had no color of right to enforce collection thereof, it was unconstitutional, because not due process of law.

Action in the district court for Anoka county to determine the adverse claim of defendant to certain land. Plaintiff based her title on a sale made October 12, 1893, under a judgment in proceedings to enforce payment of taxes by virtue of Laws 1893, c. 150. The case was tried before Smith, J., who found as facts substantially as follows:

(1) That on and prior to October 12, 1893, defendant was owner in fee of an undivided half of the land, and that he became the owner thereof in 1892; that prior to that time the land was owned by Pace and Mortin, and was assessed in their name from 1857 to 1880, inclusive; that taxes were levied and extended against the land for each of said years, and were not paid, but became delinquent from year to year, and forfeited to the state, and that said taxes for 1880 were $5.82.

(2) That August 12, 1881, pursuant to Laws 1881, c. 135, judgment was duly entered against the land, adjudging it liable for taxes for said several years to the amount of $450.31, which sum included taxes for 1880; said judgment declaring said sum a lien on the premises; and directing the same to be sold unless payment thereof should be made, as provided by statute.

(3) That the sum was not paid, and the premises were duly advertised for sale to pay said taxes, but were not sold to a purchaser, nor was any record made, or evidence given, that the premises were bid in for the state, or offered for sale. That the premises were there-

[1] Reported in 68 N. W. 105.

after stricken from the tax list, and no part thereof had since been assessed for taxation, nor had any tax been levied or paid thereon, until the purchase thereof by the plaintiff, as hereinafter stated.

(4) That in pursuance of Laws 1893, c. 150, on September 12, 1893, in proceedings to enforce the payment of taxes delinquent, after due notice, judgment was entered against the land, adjudging that it was liable for taxes in the sum of $992.95, and that said amount was a lien thereon, and unless the same be paid that the land be sold, as provided by law. That in the body of said judgment said amount purported to be for the taxes delinquent thereon for the years 1857 to 1880, inclusive, while in the caption it purported to be for a judgment for the taxes delinquent thereon for the years 1879 and prior years, and in the year 1889 and prior years, while in fact there had been no taxes assessed against the land subsequent to the year 1880. That the taxes for 1880 were included in the judgment of August 25, 1881, and in the judgment of September 12, 1893, but that neither judgment showed the amount of such taxes of 1880, or of any particular year or years, but each judgment was for one gross sum.

(5) That the land was duly advertised for sale, and notice of sale given, under and by virtue of the judgment rendered September 12, 1893. That at the time and place named in said notice the premises were sold at public auction to the plaintiff for $200, he being the highest bidder.

(6) That the county auditor on the same day delivered to plaintiff a certificate of sale in due form of law, he having paid said sum therefor.

(7) That notice of expiration of redemption was given.

(8) That the time for redemption expired before the action was commenced. And

(9) That the land was then vacant and unoccupied.

As conclusions of law, the court found:

(1) That the law of 1893 did not apply to lands against which judgment was entered in 1881, and which were not sold or forfeited to the state thereunder, as required by Laws 1881, c. 135, and which had not since been taxed, and become delinquent.

(2) That the judgment of 1881, and the claim on which it was based, was barred by the statute of limitation before the passage of the act of 1893, and the legislature had no power to revive it.

(3) That plaintiff acquired no title to the land by reason of the tax sale and certificate, and that defendant was entitled to judgment.

From a judgment entered in pursuance to the above findings, plaintiff appealed. Affirmed.

*Little & Nunn*, for appellant.

*Francis G. Burke*, for respondent.

COLLINS, J. There is no question but that the claim of the state for taxes upon the land herein involved (judgment for the amount of such taxes having been entered August 20, 1881, under the provisions of Laws 1881, c. 135) was barred by the statute of limitations [2] prior to the enactment of Laws 1893, c. 150, and that it was not in the power of the legislature to revive the lien. Pine County v. Lambert, 57 Minn. 203, 58 N. W. 990. So that if defendant, as the owner of an undivided half of the land, had answered in the proceedings had under the statute last mentioned, pleading the statute of limitation in bar, no judgment could have properly been entered. The case would have been exactly the counterpart of the one just cited. But defendant owner did not appear in these proceedings, and a default judgment was rendered for the amount of the 1881 judgment, with interest and costs. The effect of these proceedings, based upon the legislative enactment, was, if held valid, to revive an outlawed tax judgment, and to restore a lost lien for taxes to the state.

That defendant had title to an undivided half of the land, and that the state had no claim upon it, when the proceedings were initiated, must stand admitted. It must also be conceded that every step taken by the state looking towards enforcement of the payment of taxes under the 1893 act was without the slightest claim or color of right. If the plaintiff's assertion of ownership in fee, through a sale made upon the 1893 judgment, is upheld, defendant, through a proceeding in rem instituted by the state, and ostensibly for the collection of taxes, has been deprived of a vested right of property without the shadow of a rightful claim upon it.

As before stated, the proceedings under which plaintiff claims title were based upon the provisions of Laws 1893, c. 150. This act may be found in G. S. 1894, in a note on page 429. The first section provides that on or before July 15, 1893, the county auditors shall prepare, and file with the clerks of the district courts, lists of all par-

[2] G. S. 1894, § 5135.

cels of land in their respective counties against which a judgment for taxes was entered under the provisions of Laws 1881, c. 135, which were not sold to an actual purchaser at the sale held under that law, and which still remain unsold and unredeemed, and against which the tax judgment remains unsatisfied. Upon its face, this statute authorized and directed to be included in these lists lands which had not been sold, or even offered for sale, under the 1881 judgments, and against which the state had no claim for taxes, namely, lands upon which the lien of the state, and its right to proceed, had long before been lost.

The charge for taxes on this particular tract of land prior to 1879 had merged in the 1881 judgment, and no sale to enforce a collection thereof had ever taken place. The statute of limitations had run against the judgment, and against all proceedings through which the taxes could be collected. Because the lien and right of the state had been extinguished by the lapse of time before the passage of the 1893 statute, it was not in the power of the legislature to restore and revive it. Pine County v. Lambert, supra. The state was as powerless to revive a right which had terminated, or to create a claim when none existed, as would have been a private individual. It could not, by asserting the existence of a right or claim, create or establish one by legislative enactment. Nor could it, by the mere assertion of a wholly unfounded claim or right, confer upon a court the power to adjudicate, in proceedings in rem, that such a claim or right existed; for there is no claim or right, in such a case, upon which a court could pass. But by the enactment of the 1893 statute the legislature proceeded upon the groundless assumption that the state had a rightful claim upon a certain class of lands for delinquent taxes, and, in terms, empowered the district courts to proceed against the res to enforce the collection of such claim. As to these lands, the vested right of property in the owners was within the protection of the constitution, and of this vested right the owners could not be deprived without due process of law.

If the legislation was invalid because there was nothing to legislate upon, the action of the court could not impart validity into the legislation, and hence the court might as well have proceeded to render judgment without any legislation whatsoever. No one would attempt to defend the conclusiveness of the 1893 judgment had there been no

legislation in respect to taxes against which judgment had been entered in 1881. So that, at the last analysis, we really have a case where, in proceedings to enforce the collection of taxes, a judgment has been entered against a tract of land for taxes which not only did not exist, but which was entered without legislative authority. But this is not specially important, for it was impossible for, the legislature to confer jurisdiction upon the district court over the subject-matter on which it acted,—the extinguished tax liens,—unless valid legislation could be had in reference to such liens, and their enforcement, as against the land itself, by a proceeding in rem.

A law is constitutional which provides for the collection of taxes by a proceeding in rem, although the owner of the res is a resident of the state, and is even an occupant of the res. Such a proceeding is due process of law. But the state can no more be given the right to proceed against such a resident or occupant by a proceeding in rem to enforce every imaginary right or claim which it pretends to have, than a private individual can be given such right. It is true that there are a large class of such tax proceedings where, in order to determine the rights of the state, a judicial inquiry is necessary in each case. A proceeding in rem is due process of law, and, whether the decision is right or wrong in the particular case, the court has jurisdiction, and if the statute is complied with the judgment is valid. And this is true whether the proceeding is an original one, or a subsequent proceeding brought to ascertain the validity, or to cure an invalidity in a prior proceeding, as in chapter 150, supra. But if, under the pretext of enforcing the payment of taxes, a statute provides for the institution of proceedings in rem in a class of cases in which it affirmatively appears on the face of the statute that the state has no claim, or color of claim, the proceeding is not due process of law, and as to that class of cases the statute is unconstitutional. There is nothing in this case for judicial inquiry, beyond the denunciation of the statute itself, and the legislature cannot hide such an unfounded claim behind such a pretended inquiry. The state cannot use for such a purpose its prerogative right to collect taxes by a proceeding in rem against the property of persons over whom it may readily obtain personal jurisdiction within this state. Supposing the legislature had prefaced this statute with a preamble in which it was recited that "whereas, in many cases, tax judgments

65 M.—34

were entered under Laws 1881, c. 135, but no tax sale was ever made on the judgment, and all such judgments are now outlawed, but by proceeding against the property in rem the state may in many cases catch the owners of the same asleep, and obtain judgment against the property: Now, therefore, be it enacted," etc. What would such a preamble add to this statute?

There may be, and undoubtedly is, a large class of cases covered by this statute where a judicial inquiry was both necessary and proper. But it affirmatively appears on the face of the statute that there is another class for which it attempts to provide, but in which such inquiry is neither necessary nor proper, to wit, cases where a judgment was entered under the law of 1881, and no sale was ever made thereon. These judgments had been outlawed two years when the law of 1893 was passed, and it did not require the proof of any fact in any court to show this. If the state is foolish enough to permit the statute of limitations to run against the right to collect taxes, and thereby offer a premium on evading payment, it must suffer the consequences. That the legislature attempted to do a thing it was powerless to do; that its action was impotent; that in so far as it authorized the court to acquire jurisdiction over the res by seizure under process, and to proceed in behalf of the state against lands on which it had no color of claim, there was no due process of law; and that there was no source for the exercise of jurisdiction by the court over the subject-matter,—conclusively appeared on the face of the statute. The law applicable in such cases is thus stated: If the alleged jurisdiction of a court to take any particular action is derived from a statute, and the statute is shown to be unconstitutional, the proceedings of the court must be considered void. Black, Judgm. § 216. And again, when considering the subject of collateral attack, the same author says (section 240) that, in every case where jurisdiction of the subject-matter is challenged, recourse must be had to the source of jurisdiction, whether constitution or statute, and an unconstitutional statute can have no avail as a source of jurisdiction.

Our conclusion is that, in so far as the act in question undertook to confer jurisdiction upon the district court to proceed as against lands upon which the state had lost its lien for taxes, and had no color of right to enforce collection thereof, it was unconstitutional, because not due process of law.

Judgment affirmed.