STATE v. E. R. WARD.

May 4, 1900.

Nos. 12,225—(267).

**Taxes—Laws 1899, c. 322—Unverified Answer.**

Under Laws 1899, c. 322, where the party defending against the "clear-ing-up" proceedings to enforce prior tax liens by a new judgment files his answer in court as required by law, it should be verified. But the court may, in its discretion, upon cause shown, relieve such defendant from his omission to do so, and allow the answer to be filed before hear-ing.

**Tax Judgments—Statute of Limitations.**

Under the chapter referred to, all judgments prior to 1898, on which the statute of limitations has not run, are to be included in the delinquent list provided for in that law.

**Defenses to Tax Judgments.**

The tax judgments included in such delinquent list are only open to such defenses in the new proceeding as would have applied to the judg-ments before the statute was enacted.

**Statute of Limitations.**

The statute of limitations applicable to judgments, instead of enforce-able tax burdens for the original taxes, applies necessarily in cases where, as held in this case, prior tax judgments are to be included in the new judgment.

**Sheriff—Mileage.**

Where several notices under the statute of 1899 are served by the sheriff upon one person, who is the occupant of several tracts,—all notices being served at the same time,—the officer is entitled to full mileage upon each notice served.

In proceedings in the district court for Scott county, under Laws 1899, c. 322, to enforce payment of taxes prior to the year 1897 on certain land, E. R. Ward interposed an answer, and the matter was tried before Cadwell, J., who ordered judgment against de-fendant for the year 1893 only, with penalties, costs, and disburse-ments. Reversed.

On application of the county, the court certified to the supreme court for its determination the following points:

First. Is it necessary that an answer, filed in proceedings under Laws 1899, c. 322, should be verified? If so, may the court permit the answer to be verified after the time for answering has expired, and pending a motion on behalf of the county to strike out the answer filed on the ground that it is not verified?

Second. In proceedings under said chapter, is evidence of excessive assessment competent, where a prior judgment has been regularly entered against the land for the full amount of the tax claimed?

Third. In proceedings under said chapter, has the statute of limitations run against the claim of the state and county for the amount of the tax, in cases where judgment has been duly recovered against the land for the tax more than six years and less than ten years prior to the institution of the proceedings under said act, and where under such judgment the land has, at the tax sale, been duly bid in for the state?

Fourth. Is the sheriff entitled to mileage upon each notice served upon the occupant, under section 3 of said act, where the same person is occupant of several tracts and a separate notice for each tract is served, all notices being served at the same time?

*W. B. Douglas*, Attorney General, and *W. N. Southworth*, County Attorney, for plaintiff

These proceedings are purely statutory, and in all such proceedings the provisions of the statute must be strictly followed. In the absence of a statutory regulation, the procedure in actions to enforce the collection of taxes is governed by the rules applicable to ordinary actions; but when the procedure is regulated by statute, it must conform thereto. 25 Am. & Eng. Enc. 319.

Under the second and third points counsel cited the following cases: Farnham v. Jones, 32 Minn. 7; Gilfillan v. Chatterton, 38 Minn. 335; Mulvey v. Tozer, 40 Minn. 384; Pine Co. v. Lambert, 57 Minn. 203; Kipp v. Elwell, 65 Minn. 525; Cool v. Kelly, 78 Minn. 102. In these cases, it was not necessary to decide, and the court has not decided, that in these "clearing-up" acts the state waives anything more than its title to the land under the prior proceedings; and the question as to whether the prior judgments were waived is an

open one. See also State v. Bellin, supra, page 109. The sole object of Laws 1899, c. 322, like that of the preceding acts, was to collect the amount of unpaid taxes by enforcing the state's lien upon the land. The intent of the legislature must be construed as consistent with this object, unless the language used is such as to force a contrary construction. In examining the act it is fair to presume that the legislature understood the elementary principles of law. It is beyond the power of the legislature to revive a right which has been lost or extinguished. Pine Co. v. Lambert, supra. In all cases where a valid judgment has been entered against land for a delinquent tax, the claim for such tax is merged in the judgment. 15 Am. & Eng. Enc. 336, 337. See also Chauncey v. Wass, 35 Minn. 1; Countryman v. Wasson, 78 Minn. 244. As to the sheriff's fees, see Steenerson v. Board of Co. Commrs., 68 Minn. 509.

*F. C. Irwin*, for defendant.

Under the second point counsel cited: Chauncey v. Wass, 35 Minn. 1; County of Redwood v. Winona & St. P. L. Co., 40 Minn. 512; County of Chisago v. St. Paul & D. R. Co., 27 Minn. 109; Gage v. Pumpelly, 115 U. S. 454. Under the third point counsel cited: Cool v. Kelly, 78 Minn. 102; Pine Co. v. Lambert, 57 Minn. 203; Kipp v. Elwell, 65 Minn. 525; Mulvey v. Tozer, 40 Minn. 384; State v. Baldwin, 62 Minn. 518; McHenry v. Kidder Co., 8 N. D. 413; Cooley, Taxn. 449; San Francisco v. Jones, 20 Fed. 188.

LOVELY, J.

This cause arises under Laws 1899, c. 322, which was enacted to provide for a clearing up of delinquent taxes remaining unpaid for prior years, upon which the statute of limitations had not run. This cause was recently heard, but has been certified to this court for review upon several propositions involved therein, under G. S. 1894, § 1589, because, in the opinion of the trial court, the points were of great public importance, and likely to arise frequently.

Generally stated, the proceedings under Laws 1899, c. 322, § 2, adopt the system of practice in vogue for the collection of taxes by judicial process; bunching the taxes of the different years prior

thereto against a particular tract, and returning the same, as in other cases, into the district court, where

"The same proceedings shall be had with reference to advertisement, judgment and sale of the property described in such forfeited lists, as are required by the general tax law for advertisement, judgment and sale of property described in the regular delinquent list [of the current year], but separate tax judgment * * * books shall be provided for the forfeited lists."

Upon proceedings to enforce payment of taxes in the regular list, any person, etc., having an interest may, at the time provided for in the statutes, "file in the office of the said clerk [of district court] an answer, verified as pleadings in civil actions, setting forth his defense or objection to the tax," etc. G. S. 1894, § 1584. In this case an answer was filed in time, but was not verified. Upon the call of the calendar, the facts having been agreed upon, the trial court held that such omission of the landowner to verify his answer might be cured by a verification to be then made, and relief was accordingly granted to cure such omission. We see no reason for making an exception to the general rule provided for in G. S. 1894, § 5267, authorizing courts, in the exercise of sound discretion, to relieve against mistakes, and extend time for the performance of formal acts, or to allow such acts to be done, after the time limited by law. This discretion was applied in this case, there is no reason to doubt that it was wisely exercised, and the action of the trial court is sustained in that respect.

The answer having been verified, the defendant contested the validity of the taxes for the years 1888, 1889, 1890, 1892, and 1893. As the taxes of each of these years became delinquent, proper proceedings were instituted, a judgment for the tax of each of such years was entered against such land, and judgments duly entered thereon, under the forms provided by law. In each case the land was bid in by the state. Defendant alleged in his answer that the assessment for each of these years was unfair, and largely exceeded the actual value of the property; and it was stipulated that such was the fact, if it was "competent to show the same in this proceeding." The trial court held that as to the year 1893 the limitation had not run, but that upon the prior years the statute had

run, and that for the tax of 1893 no evidence was admissible to show that the assessment was for more than the value of the property, and ordered judgment accordingly; but held further that as to the taxes of 1889, 1890, and 1892 the statute had run, and that taxes for any such prior years could not be included in the judgment provided for in the "clearing-up" proceedings under Laws 1899, c. 322.

Briefly stated, the court below held the view that the statute of limitations applicable to judgments, extending their validity to ten years, did not apply, and that the years prior to 1893 must be excluded from the new judgment, because they were simply enforceable tax burdens, and would be barred in six years.

This leads to the real question in this controversy, which may be expressed briefly in the proposition whether the statute of 1899 intended to recognize the validity of tax judgments previously rendered, or only to provide for a new action on the original taxes, excluding from the clearing-up provisions adopted by the law of 1899 all the judicial proceedings by which the former judgments were secured. To further abbreviate the real point involved, does the provision in section 1 of the Laws of 1899 which directs that the "auditor of each county shall make out and append to such delinquent list [of the current year] a list of all taxes upon real estate in the county which appear to have become delinquent" in the year 1897, or any prior years, etc., which are unpaid and unsatisfied, relate to the perfected judgments, or only to the original taxes, considered as distinct from such judgments?

A literal reading of this section, as well as of the whole law, does not determine this question, and involves the subject in perplexity, calling for construction. Chapter 322, it is true, provides for a list of prior taxes, and it is urged that the word "taxes" cannot, in legal conception, embrace tax judgments; that the word "taxes," ex vi termini, excludes the judgments, into which such tax has ripened. We cannot take this limited view of its use. It is certainly not the popular understanding of its meaning. A taxpayer wishing to pay up back taxes or to inquire, for any purpose, what was due upon a piece of land to the state, would uniformly speak of such liens as taxes; and the very title of chapter

11 of the General Statutes, in which the provisions of law for obtaining judgments are included, has only the significant title "taxes." Again, section 3 of the act of 1899, which contains provisions clearly intended for a commutation, to some extent, as a consideration for payment before the new judgment is entered, provides that before the sale the landowner may pay a less sum than the amount of the judgment; and it is in this particular instance, and nowhere else in this law, that any reference is made to the "original taxes" in terms, and this as a basis only of settlement and commutation, to avoid the severe consequences of a judgment without redemption.

It seems somewhat significant that the words "original taxes" should have been used in this connection, and no other, if the legislature intended to distinguish between the acquired judgment liens of the state and the taxes upon which the same were entered. The difficulty suggested is not very much helped by any previous decision of this court. In several cases which have been here the distinction between "original taxes," as such, and judgments entered therein, has been noticed. Pine Co. v. Lambert, 57 Minn. 203, 58 N. W. 990; Kipp v. Elwell, 65 Minn. 525, 68 N. W. 105; Cool v. Kelly, 78 Minn. 102, 80 N. W. 861. But no adjudication has been made that is useful in the case at bar, further than to suggest that the judicial recognition of the difference suggested was brought to the attention of the legislature, and that the inference would follow that, if the lawmakers had intended to give up any rights which the state possessed, they would have done so in clear and unambiguous terms, to avoid doubt, and perhaps as an inducement to the landowner to aid the revenues of the state by accepting the provisions for commutation.

We think, after all, that the legislative intent must be derived finally from a consideration of the objects of the statute, in connection with the means which it adopts to accomplish the desired result. The object of the statute was unquestionably to obtain for the state and the different funds for which it is the trustee the unpaid revenues belonging to it. This goes upon statement. And it is almost as obvious that it was not the purpose of the legislature to surrender any substantial revenues, securities, or rights which

it possessed, for such a surrender would defeat the object of the law; and that the limited view of the defendant and the order under review would have such effect seems to us apparent. If the judgments are valid, and embraced, in a general and broad sense, by the word "taxes," in the statute, the state will, if the law is practically successful, have the benefit of such judgments for ten years; otherwise, the legislature has sacrificed unnecessarily four years of substantial obligations and enforceable tax liens. It has also sacrificed the costs involved in the judicial proceedings to obtain such judgments, where the commutation benefits are not accepted. And in cases where the intermediate steps to collect the original taxes are defective, and for that reason the taxes are invalid, it has given up the benefit of the judgment, with all that it implies. And, further, where the taxes are valid in all respects, and the best reason exists for their enforcement, they, having been merged in the judgment, are, as a legal result of the elementary and well-known principle that affects the doctrine of merger, extinguished by the voluntary nullification of the judgment on the part of the state, whereby the claim for the taxes themselves is embraced and merged in the judgment, 1 Freeman, Judgm. § 215, which is entirely abandoned, and the statute absolutely defeats its own purpose, and gives away that which it seeks to secure. We need not pursue the matter further.

We cannot and must not assume that the legislature, in adopting a statute to accomplish a beneficent purpose, by a dubious use of words intended to give away and release the better part of its substantial possessions, and thus defeat the very end it intended to accomplish. We hold that the court below erred in its ruling upon this question, and that the tax judgments for ten years were intended to be embraced in the new proceeding for clearing up the delinquent taxes of previous years, and were not barred by any other limitation than that which applies distinctively to judgments.

Upon the further question submitted, viz., whether the sheriff is entitled to mileage upon each notice served upon the occupant of the lands, under Laws 1899, c. 322, § 3, where the same person is occupant of several tracts, and a separate notice for each tract is

served, all notices being served at the same time, a majority of the court are of the opinion that the proceeding against each tract is of a distinct character, separate from proceedings under the law against any other tract, in the same way and to the same extent that a service of summons or process in one legal action is distinct and separate from any other, and that the sheriff was entitled to full mileage on each notice served.

. To the first question we answer: The pleading should be verified, but the court may, in its discretion, permit it to be verified after filing, as in this case.

To the second question we answer: No.

To the third question we answer: No; the statute of limitations runs upon the judgment, instead of the original tax liens, and the claim of the state is not barred until ten years from the rendition of the same.

To the fourth question we answer: Yes; the sheriff was entitled to mileage, under the circumstances as stated, upon each notice.

The order of the court below is reversed, and the case is remanded for further proceedings in accordance with the views expressed in the opinion.